IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 13, 2001

## STATE OF TENNESSEE v. JAMES HILL, JR.

**Direct Appeal from the Criminal Court for Fayette County**
**No. 4859A     Jon Kerry Blackwood, Judge**

-------

### No. W2000-02194-CCA-R3-CD  - Filed July 20, 2001

-------

A Fayette County jury convicted the defendant of attempted aggravated robbery.  The trial court sentenced the defendant to the maximum term of 15 years as a Range III persistent offender.  In this appeal, the defendant challenges the sufficiency of the evidence and the length of his sentence.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and CORNELIA A. CLARK, Sp. J., joined.

William S. Rhea, Somerville, Tennessee (at trial), and C. Michael Robbins, Memphis, Tennessee (on appeal), for the appellant, James Hill, Jr.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Colin A. Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On October 16, 1999, at approximately 10:00 p.m., the defendant, armed with a shotgun, and co-defendant Tony Walker entered Wayne's Grocery wearing stocking masks. There were six people in the store at that time.  The defendant ordered everyone to lie on the floor, but everyone remained standing.  The defendant pointed the shotgun at three people, including Sherry May, an employee, who testified that the incident "scared [her] to death."  Wayne Hampton, the owner, proceeded from his office when he heard the commotion, informed the defendant that he recognized his voice, and asked the defendant to take "some beer or something and just go on and leave."  Both perpetrators removed their stocking masks.  The defendant then laughed and stated he intended to pawn the

shotgun. Hampton stated that he "played along" with the defendant's statement because he was frightened. Hampton eventually grabbed the shotgun from the defendant. Hampton testified that he discovered the gun was unloaded when he "broke it down." Hampton then returned to his office, locked the door, and called the sheriff's department. The defendant and co-defendant left the scene.

## SUFFICIENCY OF THE EVIDENCE

The defendant alleges that the evidence is insufficient to sustain his conviction. Specifically, he contends that there is no proof that he intended to commit the aggravated robbery. We disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

### B. Analysis

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Aggravated robbery occurs when the robbery is "[a]ccomplished with a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). A "firearm" is considered a "deadly weapon." Tenn. Code Ann. § 39-11-106(5)(A). Furthermore, an attempt is committed where:

(a)     A person ... acting with the kind of culpability otherwise required for the offense:

. . . .

(3)     Acts with intent to complete the course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b)     Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101; State v. Lewis, 36 S.W.3d 88, 94 (Tenn. Crim. App. 2000).

Sherry May, an employee, Michael Roberts, an employee, Wayne Hampton, the owner, and Barry Johnson, a patron, all testified that they were frightened by the incident. Furthermore, May, Roberts, Hampton, and Johnson likewise testified that when the defendant entered, he wore a stocking mask, brandished a gun, and ordered everyone to lie on the floor. This testimony sufficiently established that the defendant entered Wayne's Grocery with the intent to commit robbery with a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-401,-402. The defendant's actions clearly manifested a "substantial step" toward the commission of the offense. *See* Tenn. Code Ann. § 39-12-101(a)(3).

The co-defendant testified that neither he nor the defendant intended a robbery; neither was wearing a stocking mask; the defendant intended to pawn the gun to Hampton; and the defendant never threatened anyone. However, the jury was free to disbelieve the testimony of the co-defendant. *See* State v. Millsaps, 30 S.W.3d 364, 369 (Tenn. Crim. App. 2000). In ascertaining the defendant's intent, the jury could infer criminal intent from the surrounding facts and circumstances. State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996) (citations omitted). Furthermore, an unloaded firearm is considered a "deadly weapon." *See* Tenn. Code. Ann. § 39-11-106(5)(A) (defining "deadly weapon" so as to include any "firearm"); Campbell v. State, 464 S.W.2d 334, 335-36 (Tenn. Crim. App. 1971). The evidence sufficiently establishes that the defendant's entire course of conduct was corroborative of his intent to commit the aggravated robbery. The defendant's pretension of wanting to pawn the shotgun came only after he was identified by the owner. This issue is without merit.

**SENTENCING**

The defendant alleges that the trial court erroneously applied enhancement factor two (the defendant was a leader in the offense which involved two or more criminal actors); or alternatively,

if the trial court properly applied this factor, the defendant's fifteen-year maximum Range III sentence was, nevertheless, excessive and improper. We disagree.

## A. Standard of Review

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## B. Analysis

No testimony was offered at the sentencing hearing. Accordingly, the trial court relied on information contained in the pre-sentence report. The pre-sentence report revealed that the defendant was convicted of eleven prior misdemeanors and nine prior felonies. The sentencing statute requires five prior felonies to classify the defendant as a Range III persistent offender, so the trial court correctly found, due to the defendant's extensive remaining criminal history, that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). Additionally, the trial court found that "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors." Tenn. Code Ann. § 40-35-114(2). The defendant only challenges the trial court's application of factor two, claiming that there is insufficient evidence to establish that the defendant was a leader of two criminal actors.

The defendant contends that the jury's inability to reach a verdict as to the co-defendant failed to establish the existence of two criminal actors for purposes of applying this sentencing factor. Firstly, facts to establish an enhancement factor need only be proven by a preponderance of the evidence, not beyond a reasonable doubt. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000). Secondly, the applicability of this factor is independent of whether another alleged perpetrator was

convicted, acquitted, or even charged, because the state only must establish the existence of "multiple offenders and that the defendant [was] a leader." State v. Keith Lamont Smith, C.C.A. No. 01C01-9709-CC-00404, 1998 WL 855438, at *2 (Tenn. Crim. App. filed December 11,1998, at Nashville), *perm. to app. denied* (Tenn. 1999). The testimony established that only the defendant brandished a shotgun; the co-defendant stood by the door and remained silent throughout the incident; and only the defendant spoke, ordering everyone to lie on the floor. The evidence supports the trial court's application of enhancement factor two.

Furthermore, we conclude that the defendant's fifteen-year sentence is not excessive. The weight given enhancement factors is left to the sound discretion of the trial court as long as it follows the principles of the sentencing act. *See* Kelley, 34 S.W.3d at 479. This issue is without merit.

## CONCLUSION

Based on the foregoing, we affirm the judgment and sentence imposed by the trial court.

_____
JOE G. RILEY, JUDGE

-5-