IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2021 Session

### STATE OF TENNESSEE v. ANTHONY EUGENE REED

**Appeal from the Circuit Court for Sequatchie County**
**No. 2019-CR-23      J. Curtis Smith, Judge**

_____

### No. M2020-00677-CCA-R3-CD

_____

The Defendant-Appellant, Anthony Eugene Reed, was convicted by a Sequatchie County jury of theft of property valued over $10,000, to wit: a Jeep Wrangler, in violation of Tennessee Code Annotated section 39-14-103, and sentenced to seven years in prison. On appeal, the Defendant argues (1) the evidence was insufficient to support his conviction for theft because the State failed to establish his intent to permanently deprive the owner of the property; and (2) the prosecution made improper comments during closing arguments which indirectly commented on his decision not to testify in violation of his Fifth Amendment right against self-incrimination. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

J. Harmon, District Public Defender; Jessica F. Butler, Assistant Public Defender, for the Defendant-Appellant, Anthony Eugene Reed.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Mike Taylor, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

At approximately eleven o'clock on Thanksgiving Day in 2018, Sandra Layne discovered that her family's 2007 Jeep Wrangler was not where it had been parked the night before. She eventually determined it had been stolen and called the police. While

en route to the Layne home around 12:30 that same afternoon, Officer Brandon Austin, who was previously familiar with Layne and her Jeep, noticed a Jeep parked in front of a duplex less than a half of a mile from the Layne home. After Officer Austin confirmed through dispatch that the license plate of the Jeep was registered to Layne, he called Officer Ben Hayne to assist him in gaining entry to the duplex. Both officers previously had been to the duplex multiple times and were familiar with the residents of the duplex. Prior to this incident, the officers had not observed the Defendant at the duplex and did not believe that the Defendant was a resident at the duplex.

Officer Austin went to the back door of the duplex, and Officer Hayne went to the front door. One of the residents with whom Officer Hayne was familiar opened the front door, allowed him to enter, and the Defendant was eventually located in the kitchen. Officer Hayne said the Defendant appeared to be "hiding" because he was behind "a wall that ha[d] an opening in it . . . backed up against a countertop[.]" When asked to "step out," the Defendant complied. The keys to the Jeep were located on the counter behind where the Defendant was standing. When asked about the Jeep, the Defendant first denied any knowledge of it, but he later admitted that he "took it." He told Officer Hayne that he noticed the keys inside the Jeep while at the residence next door to the Layne home. He then took the Jeep and drove it to the duplex where it was later discovered by Officer Austin. The Defendant confirmed that he did not live in the duplex. The officers also found another set of keys inside the Jeep, which the Defendant stated were his. The Jeep, valued at approximately $12,500, was returned to the owner the same day without any damage.

The jury convicted the Defendant as charged, and the trial court sentenced him as a Range II offender to seven years' imprisonment. Following an unsuccessful motion for new trial, the Defendant filed a timely notice of appeal, and this case is now properly before us for review.

**ANALYSIS**

**I. Sufficiency of the Evidence.** The Defendant first asserts that the evidence is insufficient to prove he possessed the requisite intent for theft and that his conviction cannot be sustained. The State responds that the evidence, when viewed in the light most favorable to the State, would allow a rational trier of fact to find the elements of theft proven beyond a reasonable doubt. We agree with the State.

When a jury finds a defendant guilty of an offense, the "verdict of guilt removes the presumption of innocence and raises a presumption of guilt, [and] the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency

of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>State v. Wagner</u>, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)); <u>see</u> Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. <u>State v. Davis</u>, 354 S.W.3d 718, 729 (Tenn. 2011) (citing <u>State v. Majors</u>, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Sutton</u>, 166 S.W.3d 686, 691 (Tenn. 2005); <u>State v. Hall</u>, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. <u>Dorantes</u>, 331 S.W.3d at 379 (citing <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." <u>Wagner</u>, 382 S.W.3d at 297 (citing <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997)).

In the instant case, the Defendant was convicted of theft of property. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). To deprive means to "[w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Tenn. Code Ann. § 39-22-106(a)(8)(A). By contrast, joyriding is a taking of another's vehicle "without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106. Thus, intent is the crucial element that differentiates theft from joyriding. <u>State v. Brooks</u>, 909 S.W.2d 854, 860 (Tenn. Crim. App. 1995). "A jury may infer a criminal's intent from the surrounding facts and circumstances." <u>State v. Roberts</u>, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996).

The Defendant argues that the evidence was insufficient to demonstrate he intended to permanently deprive the Laynes of their Jeep beyond a reasonable doubt. The Defendant claims that the State's proof only showed that he "took and briefly used a vehicle that did not belong to him." The Defendant further contends that the facts presented at trial supported a conviction of joyriding at best.

Viewed in the light most favorable to the State, the proof at trial showed that the Defendant took the Laynes' Jeep sometime between 7 p.m. on November 21, 2018 and 11 a.m. the following morning. It was unclear exactly how long he was in possession of the Jeep. The Defendant drove the Jeep up "a short road" to a nearby duplex. The Defendant pulled the Jeep into the driveway, with the license plate clearly visible from the street. The Jeep was undamaged and unaltered when it was discovered by police with the Defendant's keys inside. Officers located the Defendant inside of the duplex, apparently hiding in the kitchen. The keys to the Jeep were found on the countertop directly behind the Defendant. The Defendant's keys were located inside the jeep. The Defendant denied knowing anything about the Jeep when first questioned but eventually admitted that he "took it."

Despite the Defendant's arguments to the contrary, the fact that the Defendant did not possess the Jeep for a long period of time or damage it does not preclude a jury from finding that he possessed the requisite intent for theft. See, e.g., State v. Gentry, 538 S.W.3d 413, 427 (Tenn. 2017) (finding that despite "minimal" damage and "short[-]lived" physical seizure of real property, there was still sufficient evidence to support jury's findings that the defendant possessed requisite intent to deprive under theft statute). The jury was not required to believe the Defendant's assertion that he did not intend to deprive the Laynes of their Jeep. A rational jury could infer that his possession of the Jeep, coupled with his attempt to evade law enforcement, his possession of the Jeep keys, and his leaving his own property in the Jeep demonstrated an intent to deprive the Laynes of their Jeep. As noted by the State, the Defendant's parking the Jeep where police could see the license plate does not indicate a lack of intent but perhaps merely poor planning. A jury could infer that the Defendant was "captured too early in the criminal act" to accomplish a permanent deprivation. State v. Marvin D. Brown, No. M2000-00388-CCA-R3-CD, 2001 WL 385382, at *3 (Tenn. Crim. App. Apr. 16, 2001), perm. app. denied (Tenn. Sept. 24, 2001). The Defendant is not entitled to relief.

**II. State's Closing Argument.** The Defendant also contends that the prosecution impermissibly commented on his right not to testify during the State's closing argument by repeatedly commenting on the lack of proof in the record that the Defendant was "just borrowing the Jeep." In response, the State contends that the Defendant failed to raise this issue in his motion for a new trial and has failed to establish plain error relief. We agree with the State.

The Defendant concedes that he failed to object to the first of these comments in closing argument and failed to include the issue in his motion for new trial. Accordingly, our review is for plain error. Tenn. R. App. P. 36(b); State v. Pack, 421 S.W.3d 629, 648 (Tenn. Crim. App. 2013) (holding that because the defendant failed to make a contemporaneous objection during closing arguments, he not only had to establish that the comments were improper but also that they constituted plain error). It is well recognized

that a defendant's failure to object to a prosecutor's comments during closing argument rarely results in a reversal of the conviction.  See United States v. Smith, 508 F.3d 861, 864 (8th Cir. 2007).

The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."  Tenn. R. App. P. 36(b).  In order for this court to find plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  "It is the accused's burden to persuade an appellate court that the trial court committed plain error."  State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)).  "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established."  Smith, 24 S.W.3d at 283.

The United States and Tennessee constitutions protect a defendant's right to remain silent.  U.S. Const. amend. V; Tenn. Const. art. I, § 9.  "While closing argument is a valuable privilege that should not be unduly restricted, . . . comment upon a defendant's exercise of the state and federal constitutional right not to testify should be considered off limits to any conscientious prosecutor."  State v. Jackson, 444 S.W.3d 554, 590 (Tenn. 2014) (citations and internal quotation marks omitted).  Both direct and indirect comments on a defendant's failure to testify can violate the Fifth Amendment privilege.  Id. at 587.

The Tennessee Supreme Court outlined "a two-part test for ascertaining whether a prosecutor's remarks amount to an improper comment on a defendant's exercise of the constitutional right to remain silent and not testify."  Id. at 587-88.  Under this test, this court must consider:  "(1) whether the prosecutor's manifest intent was to comment on the defendant's right not to testify; or (2) whether the prosecutor's remark was of such a character that the jury would necessarily have taken it to be a comment on the defendant's failure to testify."  Id. at 588.  Claims of impermissible prosecutorial comment on a defendant's right not to testify are reviewed de novo.  Id.  A prosecutor's comment on a defendant's right to remain silent is a non-structural constitutional error, and to avoid reversal, the State has the burden of establishing that the error is harmless beyond a

reasonable doubt. Id. at 591. When determining whether the State has met its burden, this court "should consider the nature and extensiveness of the prosecutor's argument, the curative instructions given, if any, and the strength of the evidence of guilt." Id. (footnote omitted).

As an initial matter, we note that the record clearly establishes what occurred in the trial court. Both parties' closing arguments were transcribed and included in the record on appeal. Before the closing arguments at trial, the court instructed the jury on theft of property and joyriding as a lesser included offense. The trial court also instructed the jury that the Defendant was not required to take the stand as a witness and that his failure to do so could not be considered during deliberations. The Defendant complains of the prosecutor making the following statements during his closing argument:

> What proof is there in this record that this defendant . . . was just borrowing the Jeep and was going to bring it back to the Laynes? There is no proof, ladies and gentleman. The proof in this case is clear, this man stole these people's Jeep on Thanksgiving [and] . . . fortunately, the officers happen to take the right route and see it and were able to get these people their property back.

The Defendant's counsel did not object to these comments. During rebuttal, the State made the following statement:

> [Y]ou have to look at what the Defendant did. The Defendant took the Jeep. There's no question about that . . . . That being said, he got caught because the officers happened to drive by, and there is no proof in this record . . . he was just going to bring the Jeep back to the Laynes . . . The proof in the record is that this man took these people's Jeep, went a short distance away on another street and stopped at [a couple's residence]. Not where he lived. This is Thanksgiving morning. He took these folks' Jeep.

The Defendant's counsel objected to this comment, reminding the prosecution and the trial court that the Defendant did not have to offer any proof. The court overruled the objection after the State responded that it was not implying the Defendant had to offer proof.

The Defendant challenges the prosecutor's statements that "there is no proof in this record" that he intended to return the Laynes' Jeep as impermissible comments on his choice not to testify. This Court has previously held that comments about a lack of contradictory proof were permissible during the State's closing argument when they were used to reference the strength of the State's proof. State v. Ladarius Lockhart, No. W2018-00051-CCA-R3-CD, 2019 WL 1753056, at *6 (Tenn. Crim. App. Apr. 17, 2019) ("We

- 6 -

cannot conclude that the prosecutor's comment was such that the jury 'necessarily' would have taken it to be a comment on the Defendant's failure to testify" because "it was a reference to the strength of the State's proof, in particular, the strength of the victim's testimony and the video recording."); see also United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997) (holding that a prosecutor's statement that the evidence was "uncontracted" was a "reference to the strength and clarity of the government's evidence presented at trial" and not of such a character that the jury would have necessarily taken it to be a comment on the Defendant's failure to testify). A prosecutor is free to argue reasonable inferences from the evidence presented at trial. See State v. Thomas, 818 S.W.2d 350, 364 (Tenn. Crim. App. 1991) (reiterating that "[m]ere argument by the State that proof on a certain point is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify" (citation and internal quotation marks omitted)); United States v. Collins, 78 F.3d 1021, 1040 (6th Cir. 1996) (stating that a prosecutor "must be given leeway to argue reasonable inferences from the evidence" and "[w]here there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying").

The State contends that the prosecutor's comments about the lack of proof that the Defendant intended to return the Jeep were permissible in the context of summarizing the proof presented at trial. In our view, the prosecutor's purpose in making the point about the lack of evidence was to show that the State's proof was uncontradicted, making this a clear case of theft and not joyriding. Thus, the State was not commenting on the Defendant's decision not to testify on his own behalf. Instead, the State was simply responding to the defense's assertion that the offense was only a "temporary taking of the Jeep" and constituted joyriding by highlighting that the State's evidence demonstrated an intent to deprive, and the offense therefore equated theft rather than joyriding. The State highlighted the evidence presented during trial, which was sufficient for a jury to infer intent, as discussed in the previous section. The State also explained that it did not intend to imply that the Defendant was required to present any proof. See Jackson, 444 S.W.3d at 588. We further note that the trial court issued a curative instruction regarding the Defendant's right not to testify, and the jury is presumed to have followed those instructions. State v. Banks, 271 S.W.3d 90, 134 (Tenn. 2008). After careful review, we are unable to conclude that plain error relief is necessary to do substantial justice. See State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). The Defendant is not entitled to relief.

**CONCLUSION**

Based on the above reasoning and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE